## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| MICHAEL KAPLAN and NINA KAPLAN | : | |
| Debtors | : | Case No. 17-15868 (JKF) |
| T. LEVY ASSOCIATES, INC. | : | |
| Plaintiff | : | |
| v. | : | |
| MICHAEL KAPLAN and NINA KAPLAN | : | |
| Defendants | : | Adversary No. 17-00363 |

## OPINION

*Introduction*

      Before the Court is the Plaintiff's Motion for Summary Judgment. The Defendants have filed a Response in Opposition to it. For the reasons which follow, the Motion will be denied and granted in part.[1]

*Background*

      Before the Defendants commenced this bankruptcy case, they had been sued by the Plaintiff in the federal district court in Philadelphia. The case went to trial and the

---

[1] Because this matter involves a determination of non-dischargeability, it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I) (designating among core bankruptcy issues "determinations as to the dischargeability of particular debts")

jury returned a verdict in favor of the Plaintiff. The Defendants next filed a joint Chapter 7 bankruptcy petition seeking to discharge the liability resulting from that verdict. That prompted the Plaintiff to file this adversary proceeding seeking to except its claim from discharge. The Defendants answered the complaint and the Plaintiff now moves for summary judgment.

*Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56,[2] summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). In making this determination, the court must consider all the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See Roth v. Norfalco, LLC*, 651 F.3d 367, 373–74 (3d Cir.2011). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

*Summary Judgment*
*via Collateral Estoppel*

Plaintiff would establish its right to summary relief by application of principles of preclusion. It maintains that the same proofs which supported the jury's verdicts likewise furnish the requisite evidentiary basis upon which this Court can base a finding of non-

---

[2] Made applicable to adversary proceedings by B.R. 7056.

dischargeability of Plaintiff's claims. Although summary judgment cannot be granted whenever material fact questions remain unresolved, summary judgment is often appropriate when a claim or defense at issue is based upon res judicata (claim preclusion from an earlier action) or collateral estoppel (issue preclusion from an earlier action). *In re Kridlow*, 233 B.R. 334, 342 (Bkrtcy.E.D.Pa.1999); *see also* 18 *Moore's Federal Practice—Civil* § 131.50[3] (Matthew Bender 3d ed.). "In such circumstances the court need only compare the claims in the original action, the result in the original action, and the claims presently before the court." *Kridlow, supra, id.*; *see also Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) (holding that collateral estoppel applies in a non-dischargeability action)

*Claims in the Original Action*

The District Court action alleged violations of federal racketeering law and of the Pennsylvania common law of conversion, breach of fiduciary, duty tortious interference with contractual relations, and misappropriation of trade secrets. The jury entered a verdict in favor of Plaintiff and against the Debtors as follows:

| Against | Liable for |
|---|---|
| Michael Kaplan | RICO, conversion, breach of fiduciary duty, tortious interference with contract |
| Nina Kapan | RICO and conversion |

*See* Verdict sheet attached to both the Motion and the Response.

*Claims Presently*
*Before this Court*

The claims of non-dischargeability are based on three alternative grounds: first, that the claim is the result of the Debtors' fraud[3] and, second, that it arose out of the Debtors' breach of their fiduciary duty to the Plaintiff or out of embezzlement,[4] and third that the Plaintiff's injury in this matter resulted from willful and malicious conduct on the Debtors' part.[5]

*Applicability of the Verdict*
*To the § 523 Claim*

The Plaintiff's position is that different parts of the jury verdict prove different nondischargeability provisions. The evidentiary effect of the RICO verdict, says Plaintiff, is two-fold: it establishes liability under both subsections (a)(2)(A) and (a)(6) of § 523. The conversion, breach of fiduciary duty, and tortious interference with contract verdicts furnish the evidentiary basis upon which this Court can find liability under subsection (a)(4). Mot., 9-21.

*Debtors' Position*

Debtors dispute that any such finding may be made. All that is before the Court, they say, are verdict sheets which confirm liability for specified causes of action. Beyond that, they go on, the record is devoid of *how* the jury reached its conclusions regarding liability. Resp. 3, 6-7.

---

[3] 11 U.S.C. § 523(a)(2)(A)
[4] 11 U.S.C. § 523(a)(4)
[5] 11 U.S.C. § 523(a)(6)

*Standard for Collateral Estoppel*

And it is this question of what the jury had to have found in order to render its verdict that implicates one of the elements of collateral estoppel: identity of issues. *See National Railroad Passenger Corp. v. Pennsylvania Pub. Util. Comm'n,* 288 F.3d 519, 525 (3d Cir.2002) (listing the following four factors for issue preclusion as: (1) the *issue sought to be precluded is the same as that involved in the prior action*; (2) the issue was actually litigated; (3) there was a valid and final judgment; and (4) the determination was essential to the prior judgment) (emphasis added).[6] That requires an analysis of the elements of the causes of action in the instant complaint against those raised in the District Court action.

*Non-Dischargeable Fraud
and RICO*

Count I of this complaint seeks to except the Plaintiff's claim from discharge based on 11 U.S.C. § 523(a)(2)(A) (excepting from discharge debts arising from "false pretenses, a false representation, or actual fraud"). In specific, its Motion refines the culpable conduct down to "actual fraud." *See* Mot., pp. 10-14. Plaintiff maintains that the finding of RICO liability in the District Court precludes the Debtors from challenging liability for actual fraud in this forum. For that to be so, however, the same issue before the Court here (actual fraud) must have been before the jury in the District Court action (RICO). To determine if those issues align, the Court must compare the elements of the two causes of action.

---

[6] Because the prior judgment was rendered by a federal court, this Court will apply federal principles of collateral estoppel. *In re Docteroff,* 133 F.3d 210, 214 (3d Cir. 1997)

5

*What Constitutes*
*Actual Fraud*

The Bankruptcy Code does not define the term "actual fraud." In *Husky Intern. Electronics v. Ritz*,[7] the United States Supreme Court expounded on what constitutes "actual fraud" under § 523(a)(2)(A). The High Court explained that the term "has two parts: actual and fraud." 136 S.Ct. at 1586. "Actual" denotes any fraud that "involves moral turpitude or intentional wrong.'" *Id. quoting Neal v. Clark*, 95 U.S. 704, 709, (1878). It concluded that "anything that counts as "fraud" and is done with wrongful intent is 'actual fraud.'" *Id.*

Since the *Husky* decision, the Third Circuit has not had a case involving a claim of "actual fraud" under of § 523(a)(2)(A). However, a decision from the Bankruptcy Court for the Middle District of Pennsylvania explains that

> [t]o establish actual fraud under § 523(a)(2)(A), a creditor must prove that 1) the debtor engaged in actual fraud; 2) the debtor obtained money, property, services or credit by engaging in actual fraud; and 3) the debt arose from the actual fraud. *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 10 (B.A.P. 10th Cir. 2016). Stated differently, a creditor must prove that a debtor *took some action in furtherance of his wrongful intent*, that the fraudulent action enabled him to obtain money, property, services or credit, and that the debt arose in the context of the fraudulent scheme.

*In re Sheaffer*, 2017 WL 377941, at *4 (Bankr. M.D. Pa. Jan. 25, 2017) (emphasis added). This takes the Court to the next issue to be determined: what was the culpable act that supported the jury's RICO verdict which would likewise constitute the requisite fraudulent conduct for a finding of "actual fraud" for nondischargeability purposes.

---

[7] 136 S.Ct. 1581 (2016)

6

*Mail/Wire Fraud Predicate
Acts under RICO*

The RICO verdict was based on mail and wire fraud. *See* 18 U.S.C. § 1961(1)(B). For mail or wire fraud to be found, "[a] scheme or artifice to defraud need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 528 (3d Cir.1998) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1415 (3d Cir.1991)). Consistent with that controlling authority, the District Judge instructed the jury as follows:

> The racketeering activities that are alleged here by T. Levy Associates are acts that violate the federal, that's the United States, mail and wire fraud statutes. I have to explain to you these statutes so you understand whether T. Levy proved to you that the Defendants violated them as a predicate acts.
>
> First, the *mail fraud* statute as a predicate offense. *To prove* mail fraud, T. Levy Associates must show the following: that the Defendants *willfully and knowingly participated* in a sc[heme] *to defraud* T. Levy Associates. Second, they did so *with an intent to defraud*, and third, they *used the U.S. mail* for the purpose of executing the scheme to defraud.
>
> The second one, predicate act, remember, the first one is mail fraud. The second is wire fraud. To show wire fraud, as its other predicate act., T. Levy associates must show to you by a preponderance of the evidence that the Defendants *willfully and knowingly participated* in a scheme to defraud T. Levy Associate, they did so with an *intent to defraud*, and, third, that they *made interstate phone calls or used electronic communications* for the purpose of executing their scheme for planning to defraud.
>
> The next question you see on your test, so to speak, on your verdict slip is question three. And that is what amount of money. That's the damages question. So if you find that the Defendants violated RICO and you go to each one of them, if you find that that Defendant violated RICO,

7

> you must decide whether that violation of RICO, the racketeering statute, caused an injury to T. Levy Associates.
>
> The damages that T. Levy Associates may recover are those that are caused by the predicate acts I just talked about. Constituting the pattern of racketeering activity if they injure T. Levy Associates in its business or property.

See Mot. Ex. 4, Trial Tr. 1560-61. [emphasis added] For the jury to have reached verdict of liability, they had to have found that the Defendants (1) willfully and knowingly participated in an artifice to defraud the Plaintiff; (2) that they intended to defraud the Plaintiff; and (3) that this was done via the U.S Mail service or via interstate telephony or other electronic means. *Id*. These findings, say Plaintiff, equate with the finding required to for a finding of actual fraud under Bankruptcy Code § 523(a)(2)(A).

The Court, for its part, does not agree that the two causes of action share *all* the same elements. They do share a similar state of mind: actual fraud requires the wrongful intent when engaging in fraudulent conduct. Also in common is conduct consisting of a fraudulent scheme or misrepresentation. But this is the point at which actual fraud *may* require more in the way of proof. The *Husky* decision recognized that it "has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.'" 136 S.Ct. at 1586. It also confirmed that certain requirements, for example, justifiable reliance are still required when a fraud is based on misrepresentation. *Id*. 1589 (*quoting Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)); *accord In re Cahill*, 2017 WL 713565, at *7 (Bankr.E.D.N.Y. Feb 22, 2017); *In re Korn*, 567 B.R. 280, 302 (Bankr. E.D. Mich. 2017); *In re Silvestri*, 2018 WL 736146, at *5 (Bankr. D. Conn. Feb. 6, 2018); *In re Lanier*, 589 B.R. 901, 912 (Bankr.M.D.Fla. 2017). So, for the mail/wire fraud verdict to furnish the

8

evidentiary basis for the actual fraud, nondischargeability claim, the other element normally associated with common law fraud; to wit, reliance, must also be present. The record in the District Court established the act and intent requirements for an actual fraud claim, but not the reliance requirement.

Reliance, however, is not an element of either mail or wire fraud. The leading commentator on RICO explains:

> Probably none of the predicate acts that can form the basis of a civil RICO claim is broader than the federal mail and wire fraud statutes. These statutes prohibit any use of the mails or of interstate telephone calls in furtherance of any fraudulent scheme. *Unlike many other predicate acts, the mail and wire fraud statutes do not require that the plaintiff plead* that the misrepresentation, *reliance*, or injury stemmed directly from the conduct at issue, i.e., the mail or wire communication. The communication need only be in furtherance of a scheme which itself intentionally or recklessly causes the harm. The reach this gives civil RICO is particularly striking when it is considered that, absent civil RICO, the federal mail and wire fraud statutes do not create a private right of action
>
> Some courts, however, had tried to limit the scope of civil RICO claims based upon alleged predicate acts of mail and wire fraud by requiring that the plaintiff rely upon the misrepresentations constituting predicate acts of mail or wire fraud. Other courts declined to impose such a limitation. The United States Supreme Court resolved this issue in *Bridge v. Phoenix Bond & Indemnity Co.*,[8] holding that *first-party reliance is not required for a plaintiff to assert a civil RICO claim predicated on mails fraud.*
> …
> Following the Supreme Court's decision in *Bridge*, circuit courts have recognized that "plaintiffs need not plead or prove that they relied on defendants' alleged misrepresentations in order to establish the elements of their civil RICO claim based on mail *or wire* fraud.

Rakoff and Goldstein, *RICO Civil and Criminal Law and Strategy*, § 2.02[1]. So, the record's failure to contain any mention of reliance on the District Court's or the jury's

---

[8] 553 U.S. 639, 128 S.Ct. 213, 1170 L.Ed.2d 1012 (2008); *see also Stoneback v. ArtsQuest*, 2013 WL 3090714, at *15 (E.D.Pa. June 20, 2013) (holding the same consistent with *Bridge*)

part is explained by the fact that it is not a required finding for RICO mail/wire fraud liability. But because reliance is required for fraud under Bankruptcy Code § 523(a)(2)(A) the evidentiary value of the prepetition RICO judgment has only partial preclusive effect. *See Carden v. Yakov (In re Yakov)*, Adv. No. 18-00103 (Bankr.E.D.Pa. Apr. 25, 2019) (granting partial collateral estoppel as to 4 out of 5 elements of fraud claim and leaving justifiable reliance element as unproven by prior state court judgment).

*Willfulness and Malicious Injury under RICO*

But in addition to the nondischargeability based on fraud, the Plaintiff would apply the RICO findings offensively to bar the Defendants from disputing that its claim is one arising from willful and malicious injury on their part. The Code excepts from discharge debts incurred for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This exception requires the injury to have been both willful *and* malicious. 4 *Collier on Bankruptcy*, ¶ 523.12[2] (16th ed.) The two elements are "distinct requirements." *In re Jacobs*, 381 B.R. 128, 136 (Bankr.E.D.Pa. 2008). The term "willful" refers to a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury. *In re Coley,* 433 B.R. 476, 497 (Bkrtcy.E.D.Pa.2010) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). The plaintiff must establish that the debtor "purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially certain that injury will result." *In re Conte,* 33 F.3d 303, 305 (3d Cir.1994). "Malice" refers to actions that are wrongful and without just cause or excuse, even in the absence of personal hatred,

spite or ill-will. 4 *Collier, supra*, *id.* Thus, the Plaintiffs must establish three (3) elements demonstrating that the debt arose from an injury to the Plaintiffs that was:

(1) willful (*i.e.*, involving deliberate and intentional conduct);

(2) malicious (*i.e.*, wrongful); and

(3) intended or substantially certain to cause injury.

*See In re Jacobs, supra*, at 145.

As to the three elements, the RICO verdict certainly furnishes proof of willfulness. That term is understood to mean deliberate or intentional. The jury was instructed on the question of RICO mail or wire fraud that it had to find willing or knowing participation by the Debtors in the scheme to defraud the Plaintiff. That finding was necessary to their ultimate finding of RICO liability.

The malice element, while less clear, is also established by the jury's verdict. In this context, the "wrongfulness" which characterizes malice involves

> *conduct more culpable than that which is in reckless disregard* of creditors' economic interests and expectancies, as distinguished from mere legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice, absent some additional "*aggravated circumstances.*"

*Id.* at 139 *quoting In re Long,* 774 F.2d 875, 881 (8th Cir.1985). The guilty RICO verdict means that the jury found two things: first, that the Defendants "participated in a scheme to defraud;" and second, and more importantly for present purposes, that they did so with an intent to defraud. That second finding demonstrates an awareness of conduct that is beyond recklessness or mere indifference. It is, in fact, malicious as the statute understands it to mean.

11

What the Court cannot find from the record, however, is an *intent to injure* on Debtors' part. The jury's finding that the Defendants were liable for mail and wire fraud proves that they intended to enrich themselves via their fraud; however, it does not indicate that this was also done with the aim of injuring the Plaintiff. *See Fox v. Shervin (In re Shervin)*, 112 B.R. 724, 736 (Bankr.E.D.Pa. 1990) (finding that debtor's dissipation of assets was intended to make himself judgment proof but not finding that such conduct constituted an injury to o wrongful act against the plaintiff); *cf Siebenoller v. Rahrig (In re Rahrig),* 373 B.R. 829, 833 (Bankr.N.D.Ohio 2007) (explaining that while the fraud and willful and malicious injury exceptions to discharge share the element of scienter, they apply in slightly different contexts). Defendants are thus not precluded from disputing the Plaintiff's claim of willful and malicious injury.

*Section 523(a)(4) Claims*

That leaves the claims under the dischargeability provision set forth in subsection (a)(4). Paragraph (4) excepts from discharge debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To reiterate, the jury found both Defendants liable for conversion but only Michael Kaplan liable for breach of fiduciary and duty tortious interference of contract. The Plaintiff asks the Court to apply the jury's verdict offensively to bar Defendants from disputing non-dischargeability. Plaintiff contends that the Defendants' liability is non-dischargeable on two of the grounds set forth subsection (a)(4). The breach of fiduciary duty and tortious interference with contract verdicts constitute fraud or defalcation in a fiduciary capacity. Mot*.* 16-18. Equally, the conversion verdict constitutes embezzlement. *Id.* 18-19.

12

*Evidentiary Standards*
*Applicable to Fiduciary Fraud*

Because the Defendants dispute the evidentiary value of any part of the jury's verdict,[9] the Court will begin with the threshold element of the Plaintiff's fiduciary fraud claim; to with, whether Michael Kaplan was a "fiduciary" for purposes of § 523(a)(4). Useful to this determination is the analysis offered by Bankruptcy Judge Frank of this District:

> In dischargeability proceedings under 11 U.S.C. § 523(a)(4), it is sometimes difficult to ascertain whether a debtor was acting "in a fiduciary capacity" within the meaning of the Bankruptcy Code. The determination requires consideration of three (3) sources that bankruptcy courts consult in rendering decisions in § 523(a) proceedings: (1) the facts regarding the nature of the relationship between the debtor and the creditor; (2) the treatment of the debtor-creditor relationship under applicable nonbankruptcy law; and (3) historic bankruptcy dischargeability policy under § 523(a)(4). These sources may push and pull a court in different directions.
> …
> Historically, the United States Supreme Court has instructed that the term "fiduciary," as it is used in § 523(a)(4), is to be construed narrowly. As far back as 1934, the Court stated that "the statute speaks of technical trusts, and not those which the law implies from the contract." *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (internal quotations and citation omitted). *See also Upshur v. Briscoe,* 138 U.S. 365, 375, 11 S.Ct. 313, 34 L.Ed. 931 (1891) ("Within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms").
>
> Thus, the term "fiduciary capacity generally has a narrower meaning in bankruptcy than its traditional common law definition." *In re Dawley,* 312 B.R. 765, 777 (Bankr.E.D.Pa.2004) (internal quotations omitted). The key inquiry is to distinguish "§ 523(a)(4) fiduciaries" from mere agents or representatives. *See, e.g., In re Scott,* 203 B.R. 590, 596–97 (Bankr.E.D.Va.1996); *In re Reeves,* 124 B.R. 5, 9–10 (Bankr.D.N.H.1990). In other words, § 523(a)(4) is not intended to apply to an ordinary

---

[9] Resp. 9

13

> commercial or contractual relationship. *See, e.g., In re Lowery,* 440 B.R. 914, 926 (Bankr.N.D.Ga.2010); *Coley,* 433 B.R. at 496.
>
> In determining whether the requisite fiduciary relationship exists, bankruptcy courts look "for guidance" to applicable nonbankruptcy state law. However, consistent with the Supreme Court's admonition in *Davis* of the limited nature of a § 523(a)(4) fiduciary, the mere fact that the parties' relationship may have some of the characteristics of a fiduciary relationship under state law, does not necessarily mean that the relationship is a fiduciary one under § 523(a)(4). The Seventh Circuit has stated this general principle directly: "Not all persons treated as fiduciaries under state law are considered to 'act in a fiduciary capacity' for purposes of federal bankruptcy law." *In re Berman,* 629 F.3d 761, 767 (7th Cir.2011). State law "cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'"

*Larsen v. Bayer (In re Bayer)*, 521 B.R. 491, 505-06 (Bankr.E.D.Pa.2014).

And it would be the element of agency that would lead the jury to find that Mr. Kaplan had breached a fiduciary duty. The District Court instructed the jury as follows on the question of whether Plaintiff had proven its claim of breach of fiduciary duty:

> Here are the elements of a cause of action for breach of fiduciary duty: an *agent is required to act* with the utmost good faith in carrying out the interest of his or her principal. *An agent* is a person who works or follows direction of principal. *Agent, principal.* The *agent violated his duty* when he had the personal knowledge in the dealings that might affect his or her judgment and fails to act only for the principal's benefit.
>
> So, T. Levy Associates here is the principal. *Michael Kaplan is the agent*. So T. Levy Associates must prove by a preponderance that Michael Kaplan negligently or intentionally failed to use reasonable care in carrying out his duties. Second, that T. Levy Associates suffered injury. And, third, that Michael Kaplan's failure was a real factor in bringing about T. Levy Associates' injuries.

Trial Tr. 1568-69. [emphasis added] So for the jury to have found that Mr. Kaplan breached a fiduciary duty, it must first have determined that he stood in an agent to

14

principal relationship with the Plaintiff. This is not the type of trust relationship which subsection (a)(4) entails:

> A fiduciary relationship exists under § 523(a)(4) if an express or technical trust is present. *E.g.,* 4 *Collier* at ¶ 523.10[1][d]; *Coley,* 433 B.R. at 495 (citing authorities). An express trust is one "created with the settlor's express intent, usually declared in a writing." *In re Thompson,* 458 B.R. 504 (8th Cir. BAP 2011) (quoting Black's Law Dictionary 1650 (9th ed. 2009) (alterations omitted)); *accord In re Keogh,* 509 B.R. 915, 933 (Bankr.E.D.Mo.2014) (same). A technical trust is usually described as one created by statute or common law. *E.g., Keogh,* 509 B.R. at 933. Further, under § 523(a)(4), the trust relationship must pre-exist the alleged defalcation or fraud.

*Bayer*, *supra*, 521 B.R. at 506. For the jury to have found Mr. Kaplan guilty of breaching a fiduciary duty, it had to find that he breached that duty *qua* agent. Acting in that capacity does not constitute the requisite fiduciary relationship. There is then no basis upon which the Court may apply the jury's verdict as to the breach of fiduciary to find liability under § 523(a)(4).

The same must apply to the argument that the verdict for tortious interference with contract verdict likewise proves a § 523(a)(4) claim. On that cause of action, the jury was instructed as follows:

> Tortious interference is a claim against Michael Kaplan and BLC Beauty. To succeed on this claim, T. Levy Associates must prove the following by a preponderance of the evidence: First, the existence of a contractual or p[ro]spective contractual or economic relationship between T. Levy associates and a third party. Second, purposeful action by Michael Kaplan or BLC Beauty specifically intended to harm an existing relationship or intended to prevent a [pro]spective relation from occurring. Third, the absence] of a privilege or a justification on the part of Michael Kaplan or BLC Beauty. Fourth, legal damage to the Plaintiff, T. Levy Associates, as a result of Michael Kaplan or BLC Beauty's conduct, and for any p[ro]spective contract, a reasonable likelihood the relationship would have occurred but for Michael Kaplan and BLC Beauty's interference.

15

Trial Tr. 1565-66. Like the breach of fiduciary duty instructions, there is no charge for the jury to determine if an express or technical trust was part of the parties' relationship. For that reason, the tortious interference with contract verdict does not prove the fiduciary fraud claim.

*The Conversion Verdict and Embezzlement under § 523(a)(4)*

That leaves as the final part of the jury verdict the finding that both Defendants were found liable for conversion. Plaintiff contends that a finding of conversion equates to embezzlement under § 523(a)(4). Applying that finding offensively in this proceeding, the Plaintiff would bar the Defendants from disputing a charge of embezzlement. As the offense of embezzlement is among the grounds for exception of a claim from discharge, the jury award of $100,000 for that offense should be deemed nondischargeable. Mot. 18-19.

To determine if Plaintiff is correct, a comparison of the elements of embezzlement to those of conversion is required. But before getting to that analysis, two observations are warranted. First, the existence of a fiduciary relationship is not required for the non-dischargeability of a debt owing to larceny or embezzlement. *In re Vidal*, 2012 WL 3907847, at *20 (Bankr.E.D.Pa. Sept. 7, 2012) citing *In re Giarratano*, 299 B.R. 328, 337 (Bankr.D.Del.2003). Second, for purposes of this subsection, a bankruptcy court should apply the federal common law definition of embezzlement. *Id.* at *21; see also United States v. Patton,* 120 F.2d 73, 75 (3d Cir.1941) ("It is ... well settled that when a federal statute uses a term known to the common law to designate a

16

common law offense and does not define that term, courts called upon to construe it should apply the common law meaning).

Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895). To prove a debtor committed embezzlement within the meaning of § 523(a)(4), a plaintiff must establish that: (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent. *Ginsburg ex rel The Vertical Group, Inc. v. Birenbaum (In re Birenbaum),* 2006 WL 1997478, at *8 (Bankr.W.D.Pa. July 7, 2006).

Compare this to the District Judge's instructions as to the elements for conversion:

> There is also a claim here you see for T. Levy Associates conversion claim. … Conversion is the *deprivation of another person's or party's interest in property* or right in property or use or possession of tangible personal property, or other interference with [sic] *without the owner's consent* and *without lawful justification.*

Trial Tr. 1567 [emphasis added].[10]

The two causes of action differ in at least two respects: conduct and state of mind. To embezzle, one must *be entrusted* with the property of another; to convert, one *deprives another of the other's property*. *See In re Hatch*, 2009 WL 3208694, at *6

---

[10] This is consistent with established Pennsylvania law. *See In re Lewis*, 478 B.R. 645, 668 (Bankr. E.D. Pa. 2012) (citing the very same elements for a cause of action of conversion); cf *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004) (recognizing that federal courts have no authority to derive general common law)

17

(Bankr.E.D.Pa., Sept 30, 2009) (finding that claim involving debtor's wrongful obtaining of property right; i.e., by conversion, cannot by definition constitute embezzlement); see also *In re Dawley*, 312 B.R. 765, 779 (Bankr.E.D.Pa. 2004) (explaining that plaintiff alleging embezzlement must first "show that defendant received property legally").

Here, the jury was instructed that it must find that the Defendants deprived Plaintiff of its property without Plaintiff's consent if they were to return a verdict of liability for conversion. They did so and the obvious inference from that verdict is that they found a lack of consent. That finding precludes a claim for embezzlement. On that basis alone, the Court may reject the plaintiff's request to deem the issue of embezzlement settled by the jury's verdict.

And it is not only the predicate acts which are inapposite. The requisite state of mind for a claim of embezzlement is not established by the conversion verdict. Embezzlement requires a showing of fraudulent intent. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273, 133 S. Ct. 1754, 1759, 185 L. Ed. 2d 922 (2013) (noting that embezzlement "involv[es] moral turpitude or intentional wrong"); *In re Gregorowicz*, 27 B.R. 193, 195 (Bankr.M.D.Pa.1982) ( stating that embezzlement under § 523(a)(4) requires proof of fraudulent intent); *In re Bell*, 498 B.R. 463, 483 (Bankr.E.D.Pa. 2013) (listing among the elements of embezzlement fraudulent intent). Fraudulent intent is defined as "intent to defraud, to deceive, acting in bad faith." *In re Kiesewetter*, 391 B.R. 740, 749 (Bankr. W.D. Pa. 2008)

> Conversion, on the other hand, requires simple intent:
>
> Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful

18

justification. Conversion can result only from an *act intended to affect chattel*. *Specific intent is not required, however, but rather an intent to exercise dominion or control* over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort. Money may be the subject of conversion.

*Johnson v. State Farm Life Ins. Co.*, 695 F.Supp.2d 201, 211 (W.D. Pa. 2010) quoting *Parker Oil Co. v. Mico Petro and Heating Oil, LLC,* 979 A.2d 854, 860 (Pa.Super.2009). [emphasis added]. The jury's verdict as to conversion tells the Court nothing beyond that they found the Defendant knew what they were doing as to the property wrongfully taken. But as to what their intentions were as to the Plaintiff when they undertook this act, no conclusion may be reached. So, the record on conversion fails to furnish the requisite evidentiary basis upon which this Court can conclude that embezzlement is established.

*Summary*

The record from the District Court proceeding is either inapposite or underdeveloped for purposes of collateral estoppel. For that reason, the Plaintiff's Motion for Summary Judgment must be partially denied.

An appropriate Order follows.

BY THE COURT

Date:   October 4, 2019

Jean K. FitzSimon
United States Bankruptcy Judge

19